UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SPV 1 LLC | * CIVIL ACTION |
| | * |
| VERSUS | * NO. |
| | * |
| DAEBO INTERNATIONAL SHIPPING | * SECTION " " |
| CO., LTD. AND SHINHAN CAPITAL | * |
| CO., LTD. | * MAGISTRATE (   ) |
| | * |

**VERIFIED COMPLAINT**

Plaintiff, SPV 1 LLC, ("SPV" or "Plaintiff"), appearing through undersigned counsel and for its Verified Complaint against Daebo International Shipping Co., Ltd. ("Daebo") and Shinhan Capital Co., Ltd ("Shinhan"; collectively, "Defendants"), alleges, upon information and belief, as follows:

1.

This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and is brought pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.  Jurisdiction is proper under 28 U.S.C. § 1333, as hereinafter more fully set forth.  This action is brought pursuant to 9 U.S.C. § 8 for the purpose of obtaining security for a foreign arbitration proceeding.  Venue is proper in this Court because Defendants have property located within this district, *to wit*, the M/V DAEBO TRADER.

1760317-1

1

2.

At all material times to this action, SPV, was and still is a corporation or other business entity organized and existing under the laws of a foreign country, and was and is the registered owner of the M/V KACEY (the "KACEY").

3.

At all material times to this action, Shinhan was and is a corporation or other business entity organized and existing under the laws of a foreign country.

4.

At all material times to this action, Daebo was and is a corporate or other business entity organized and existing under the laws of a foreign country.

5.

On or about October 15, 2014, SPV, as owner/operator of the KACEY, entered into a Government Form charter party with Daebo whereby SPV agreed to charter the KACEY to Daebo for a period of about 70 days (without guarantee).  As is customary, the charter agreement was memorialized in (1) a fixture recap, (2) a *pro forma* charter party, and (3) rider clauses, which together constitute and are hereinafter collectively referred to as the "KACEY Charter Party."  *See* M/V KACEY Fixture Recap, attached as Exhibit A (the "Fixture Recap"); Pro Forma Government Form Charter Party, attached as Exhibit B ("Government Form Charter Party"); M/V KACEY Rider Clauses, attached as Exhibit C ("Rider Clauses").

6.

Pursuant to the KACEY Charter Party, Daebo was obligated to pay SPV $3,750 USD per day or portion pro rata thereof in exchange for the use of the KACEY through the first sixty-five (65) days of the charter, and thereafter was obligated to pay SPV $9,750 USD per day or portion

1760317-1                                      2

pro rata thereof for all additional days until termination of the charter.  *See* Fixture Recap, ¶ 2 (DURATION).

7.

In addition to charter hire as specified above, the KACEY Charter Party obligated Daebo to "provide and pay for all fuel except as otherwise agreed, Port Charges, necessary, compulsory Pilotages, Agencies, Commissions, towages, boatages, stevedoring, tallying, canal dues, river tolls, Consular Charges… and all other usual expenses…."  *See* Government Form Charter Party, Cl. 2.

8.

Clause 18 of the applicable Government Form Charter Party provides that "Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the owners in the vessel."  *See* Government Form Charter Party, Cl. 18.  In addition, Clause 48 of the Rider Clauses provides that "[i]n no event shall Charterers procure, or permit to be procured, for the vessel, any supplies, necessaries or services without previously obtaining a statement signed  by an authorized representative of the furnisher thereof, acknowledging that such supplies, necessaries or services are being furnished on the credit of Charterers and not on the credit of the vessel or of her Owners, and that the furnisher claims no maritime lien on the vessel therefore."  Rider Clauses, Cl. 48.

9.

In breach of its obligations under the KACEY Charter Party, Daebo has failed to make timely charter hire payments due and owing to SPV in exchange for Daebo's continued use of the vessel.  As of February 18, 2015, Daebo is indebted to SPV in the amount of $66,035.83 for

charter hire earned and due but unpaid. This amount is subject to increase and revision due to Daebo's continuing failure to pay charter hire.

10.

On information and belief, on or about February 3, 2015, pursuant to an order received from Daebo, A/S Dan Bunkering Ltd. ("Dan Bunkering") provided bunkers to the KACEY in the Port of Houston. Under the terms of the KACEY Charter Party, Daebo was responsible for the cost of such bunkers, was prohibited from permitting Dan Bunkering to incur a lien against the KACEY for such bunkers, and was obligated to obtain a statement from Dan Bunkering disavowing such lien prior to delivery of the bunkers to the vessel. On information and belief, Daebo breached each of the foregoing obligations of the KACEY Charter Party as regards the bunkers provided by Dan Bunkering.

11.

On or about February 12, 2015, Dan Bunkering caused the arrest of the KACEY in the Port of Houston to enforce an alleged maritime lien against the vessel resulting from Daebo's acts and omissions as described above. In order to obtain the vessel's release so that she could continue her engagement in maritime commerce, SPV paid to Dan Bunkering the sum of $120,762.00 in compensation for the bunkers provided to the KACEY. *See* Dan Bunkering Invoice, attached as Exhibit D. As Daebo was obligated to pay this amount under the KACEY Charter Party and to prevent any liens from accruing against the vessel but failed to do so, SPV's payment to Dan Bunkering constitutes damages suffered by SPV as a result of Daebo's breach of the KACEY Charter Party.

12.

On or about January 31 and February 13, 2015, again pursuant to orders from Daebo, Bay-Houston Towing Co. ("Bay Houston") was instructed to provide tug assistance to the KACEY during the vessel's port call in Houston.  *See* Bay Houston Invoice, attached as Exhibit E.  Under the terms of the KACEY Charter Party, Daebo was responsible for the cost of such tugs, was prohibited from permitting Bay Houston to incur a lien against the KACEY for such tugs, and was obligated to obtain a statement from Bay Houston disavowing such lien prior to the tug assistance being requested.  On information and belief, Daebo breached each of the foregoing obligations of the KACEY Charter Party as regards the tug services requested from and provided by Bay Houston.

13.

On or about February 13, 2015, following the release of the KACEY from her arrest by Dan Bunkering as described above, Bay Houston threatened to arrest the KACEY in the Port of Houston to enforce the alleged maritime lien against the vessel resulting from Daebo's acts and omissions as described above.  In order to prevent the re-arrest of the vessel and to allow the KACEY to sail from Houston to its next port of call, SPV paid to Bay Houston the sum of $8,844.42 for the tug services.  As Daebo was obligated to pay this amount under the KACEY Charter Party and to prevent any liens from accruing against the vessel but failed to do so, SPV's payment to Bay Houston constitutes damages suffered by SPV as a result of Daebo's breach of the KACEY Charter Party.

14.

Further pursuant to the KACEY Charter Party, Daebo is required to ensure upon redelivery of the vessel that she has onboard the same quality and quantity of bunkers as at the

commencement of the charter.  Upon Daebo's failure to provide and pay for bunkers for the vessel as set forth above, the quantity and quality of bunkers onboard reflected a discrepancy of $19,098.30, *i.e.*, the bunkers onboard were valued at $19,098.30 less than at the time of the vessel's delivery to Daebo under the KACEY Charter Party.  Under the KACEY Charter Party, SPV is entitled to recover the value of these bunkers from Daebo.

15.

In addition to the foregoing, upon Daebo's breach of the KACEY Charter Party the vessel's holds were not properly cleaned, as required of Daebo under the charter party. Accordingly, SPV is entitled to assess a contractually stipulated fee of $4,500 ILOHC ("in lieu of hold cleaning").

16.

On the basis of the foregoing, Daebo is indebted to SPV in the total present amount of $219,240.55 as a result of its breaches of the KACEY Charter Party.

**ALTER EGO ALLEGATIONS**

17.

SPV, by this reference, incorporates all foregoing allegations as Alter Ego Allegations as if repeated herein *in extenso.*

18.

Upon information and belief, Shinhan, as registered owner of the M/V DAEBO TRADER, is merely an alter ego of Daebo.[1]  Daebo is the reported group owner, ship manager, and operator of the DAEBO TRADER (IMO No. 9230153), and the reported disponent owner of

---

[1] *See* Exhibit F, verifying that on January 5, 2010, Daebo Shipping Co., Ltd. merged with Daebo International Shipping Co., Ltd.  As of that date, Daebo Shipping Co., Ltd., was no longer in existence and transferred all of its assets, liabilities, and rights and duties to Daebo International Shipping Co., Ltd.  Daebo International Shipping Co., Ltd therefore is the successor or group owner of the DAEBO TRADER.

Shinhan.[2]  Daebo, therefore, is in reality the true and beneficial owner of the DAEBO TRADER, which is currently alongside Cargill (Westwego) terminal within this District.[3]

19.

Further, upon information and belief, Shinhan and Daebo act as a single business entity, with such unity of ownership and interest that no separation exists between them.  Specifically, it is believed that Shinhan has directors and subscribers that have been nominated by Daebo for purposes of ownership confidentiality and anonymity.

20.

Further, Shinhan's registered ownership of the DAEBO TRADER should be disregarded. Upon information and belief, Shinhan is a wholly-owned subsidiary of the larger shipping group – Daebo; and is nothing more than a bank or one-ship company vehicle set up by a bank. Accordingly, Shinhan is a "brass-plate" company created on paper to legally own a ship and possibly to limit liability for Daebo, which is the "real" and/or "beneficial owner.

21.

Thus, upon information and belief, Daebo ultimately owns and/or controls Shinhan (the reported entity owner of the DAEBO TRADER).

**RULE B ALLEGATIONS**

22.

SPV, by this reference, incorporates all foregoing allegations as Rule B Allegations as if repeated herein *in extenso*.

---

[2] *See* Lloyd's Register – Fairplay Fleet List Report by Group Owner for Daebo Shipping Co. Ltd., attached as Exhibit G.
[3] *See* Lloyd's Register – Fairplay Data Definitions, attached as Exhibit H, which defines "Group Beneficial Owner" as "the parent company of the Registered Owner, or the Disponent Owner if the ship is owned by a bank – It is the controlling interest behind its fleet and the ultimate beneficiary from the ownership.  A Group Beneficial Owner may or may not directly own ships itself as a Registered Owner.  It may be the Manager or its fleet, which is in turn owned by subsidiary companies.  Its ships may also be managed by a 3rd party under contract."

23.

Daebo's failure to pay the charter hire due under the KACEY Charter Party, as well as its failure to pay expenses of the vessel as set forth above, gives rise to an *in personam* claim for breach of contract in favor of SPV and against Daebo in the principal amount of $219,240.55 (TWO HUNDRED NINETEEN THOUSAND TWO HUNDRED FORTY DOLLARS AND 55/00).

24.

Daebo and Shinhan, on information and belief, cannot be found within the jurisdiction of this Court within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure but, as alleged, have goods and chattels within this District subject to seizure, arrest and attachment, namely the DAEBO TRADER, her engines, tackle, apparel, furniture, etc.  Further, because Daebo and Shinhan are not found within the district as contemplated under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, SPV is entitled to a Writ of Attachment pursuant to Rule B, executable against Daebo and Shinhan and all of its/their property within the district, including the DAEBO TRADER, her engines, tackle, apparel, appurtenances, equipment, furniture, etc.

WHEREFORE, Plaintiff, SPV, prays that:

1. This Verified Original Complaint be deemed good and sufficient;
2. Process in due form of law according to the practice of this Honorable Court issue against Daebo and Shinhan, citing them to appear and answer this Verified Complaint;
3. After due proceedings are had, there be judgment in favor of SPV and against Daebo and Shinhan in the full amount of SPV's claims, together with interest, costs, and attorney's fees, as set forth above;

4. Process according to the rules and practices of this Honorable Court in causes of admiralty and maritime jurisdiction issue to attach and seize in the amount sued for Daebo's and/or Shinhan's goods, chattels, credits, monies, and effects of any kind; and

5. SPV be grated all further relief as justice and equity may permit.

                      Respectfully submitted,

                      CHAFFE McCALL, L.L.P.

                      */s/ Alan R. Davis*
Ivan M. Rodriguez, #22574
Alan R. Davis, #31694
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000

and

Dimitri P. Georgantas
Texas Bar No. 07805100
Federal I.D. No. 2805
801 Travis Street, Suite 1910
Houston, Texas 77002
(713) 546-9800 (Telephone)
(713) 546-9806 (Facsimile)
**Attorneys for SPV 1, LLC**